Mark ZWICK, Petitioner

v.

WORKERS' COMPENSATION AP-PEAL BOARD (POPCHO-COJ), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Oct. 17, 2014.

Decided Dec. 11, 2014.

Reargument Denied Jan. 23, 2015.

Daniel T. Lewbart, Philadelphia, for petitioner.

Erich M. Diehl, Assistant Counsel, Harrisburg, for Intervenor Uninsured Employers' Guaranty Fund.

BEFORE: RENÉE COHN JUBELIRER, Judge, and P. KEVIN BROBSON, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Mark Zwick petitions for review of the February 27, 2014, order of the Workers' Compensation Appeal Board (WCAB) affirming in part and reversing in part the decision of a workers' compensation judge (WCJ) to grant the claim petitions filed by Marco Popchocoj (Claimant) and dismiss the joinder petition filed by the Uninsured Employers Guaranty Fund (Fund). Specifically, the WCAB reversed the WCJ's dismissal of the Fund's joinder petition and modified the WCJ's order to make Zwick secondarily liable to Claimant as a statutory employer under section 302(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 461.[1] We affirm.

■ On August 2, 2010, Claimant filed a claim petition, alleging that he injured his right hand while doing construction work for Adarlan Rodrigues on July 5, 2010. As a result of his injuries, Claimant underwent amputations of his right pinky finger and right thumb.

On October 15, 2010, Claimant filed a claim petition for benefits from the Fund, alleging that he suffered a work-related injury to his right hand on July 5, 2010, resulting in the amputations of his right pinky finger and right thumb and that this work-related injury caused a temporary, total disability. On May 31, 2011, the Fund filed a petition to join Zwick as an additional defendant.[2] The WCJ consolidated the claim petitions and joinder petition for disposition.

At a hearing before the WCJ on February 10, 2011, Claimant testified that he worked five days per week for Rodrigues and earned $100 per day. Claimant, a citizen of Guatemala, is an undocumented worker who came to the United States in 2007. (WCJ's Findings of Fact, Nos. 1a, 1e, 1h.) Claimant typically would meet Rodrigues at a local Home Depot, and Rodrigues would drive Claimant to the job site. At the job site, Rodrigues directed Claimant's work activities by telling him what projects to do and where to perform the work. (Id., Nos. 1f–1g.)

On the morning of July 5, 2010, Claimant was installing a hardwood floor at a private residence located at 866 North 20th Street in Philadelphia (Property). (Id., Nos. 1b, 6c.) Claimant was using an electric saw, which did not have a protective guard, to cut a piece of wood. The

1. Section 302(a) of the Act provides:

A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. . . .

For purposes of this subsection, a person who contracts with another (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals, or (ii) the cutting or removal of timber from lands, or (2) to have work

performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor, and such other person a subcontractor.

77 P.S. § 461.

2. The Fund also sought to join Higgins and Welch, Zwick's employer, as an additional defendant. By order dated September 27, 2011, however, Higgins and Welch was dismissed from the case by agreement of the parties.

wood "kicked back" toward Claimant. When Claimant went to grab the piece of wood, his right hand got caught in the electric saw, severing his right thumb and right pinky finger. Claimant also sustained a cut across the palm of his right hand. (*Id.*, No. 1b.) Rodrigues gave Claimant the electric saw used on the day of the accident. (*Id.*, No. 1g.)

Claimant was taken via ambulance to Thomas Jefferson University Hospital, where his right pinky finger and right thumb were amputated. (*Id.*, Nos. 1d, 1*l.*) After Claimant's discharge from the hospital, Rodrigues informed Claimant that he does not carry workers' compensation insurance. (*Id.*, No. 1o.)

Since the accident, Claimant has not returned to work. He has looked for work but has not been hired. (*Id.*, No. 1i.) Claimant is right-handed and has been unable to fully use his right hand since the accident. He continues to feel pain in his right hand and cannot move or bend his remaining fingers. (*Id.*, Nos. 1j–1k.)

Claimant presented the medical report of Daisy Rodriguez, M.D., who examined Claimant on February 22, 2011. (*Id.*, No. 5a.) Dr. Rodriguez diagnosed Claimant with loss of use of his right hand; amputations of his right pinky finger and right thumb; contractures of his right index, middle, and ring fingers; keloid of his right hand along the palmar aspect of his palm and his index, middle, and ring fingers; a retained suture; neuropathy of the fingers; a claw deformity of his right hand; and chronic pain. (*Id.*, No. 5g.) Dr. Rodriguez opined that Claimant's diagnoses resulted from his July 5, 2010, work injury and that, as of February 22, 2011, Claimant should refrain from working. (*Id.*, Nos. 5g–5h.)

At a hearing before the WCJ on May 18, 2011, Adarlan Rodrigues testified that he is self-employed but was working for Zwick at the time of Claimant's accident. (*Id.*, Nos. 6a–6b.) Rodrigues hired Claimant to perform construction work at the Property. (*Id.*, No. 7f.) Zwick would tell Rodrigues what to do, and Rodrigues would tell Claimant what to do. (*Id.*, No. 6e.) Zwick would give money to Rodrigues, who would then pay Claimant. (*Id.*, No. 6g.)

At a hearing before the WCJ on August 31, 2011, Zwick testified that he is a licensed realtor and investor and does construction rehabilitation work on residential properties. (*Id.*, No. 7a.) Zwick hired Rodrigues to do construction work at the Property and paid him approximately $750 per week. (*Id.*, Nos. 7g, 7i.) Zwick did not own the Property but was fixing it up for resale. (*Id.*, No. 7h.) Zwick hired other contractors to work on the Property in addition to Rodrigues. (*Id.*, No. 7g.) Zwick told Rodrigues what work needed to be done, but he did not tell him how to perform specific job activities. (*Id.*, No. 7*l.*) Zwick would inspect the Property periodically and would approve the completed work before paying Rodrigues. (*Id.*, Nos. 7m–7n.) Zwick did not know Claimant but learned of Claimant's injury after the accident. (*Id.*, No. 7o.) Zwick does not carry workers' compensation insurance. (*Id.*, No. 7p.)

The WCJ credited the testimony of Claimant and Zwick and the medical opinions of Dr. Rodriguez. The WCJ credited Adarlan Rodrigues' testimony only to the extent that it was consistent with Claimant's. (WCJ's Findings of Fact, Nos. 9–12.) The WCJ found that Claimant sustained a work-related injury on July 5, 2010, resulting in the total loss of use of his right hand and granted Claimant's claim petitions. (*Id.*, No. 15.) The WCJ further found that Rodrigues was Claimant's employer and that Zwick was not Claimant's statutory employer at the time

of his work-related injury because the work performed was not a regular part of Zwick's business. (*Id.*, Nos. 11–12.) Therefore, the WCJ concluded that Rodrigues was primarily liable and the Fund was secondarily liable for Claimant's workers' compensation benefits and dismissed the Fund's joinder petition.

On appeal, the WCAB affirmed in part and reversed in part. The WCAB affirmed the WCJ's award of benefits but disagreed with the WCJ's finding that Zwick was not Claimant's statutory employer under the Act. The WCAB determined that Zwick was a "contractor" under section 302(a) of the Act. Therefore, the WCAB concluded:

> Defendant Rodrigues remains primarily liable for Claimant's workers' compensation benefits. In the event Defendant Rodrigues defaults on payment of those benefits because of [his] uninsured status, Defendant Zwick remains secondarily liable as a statutory employer. In the event Defendant Zwick also defaults on payment of those benefits as a result of [his] uninsured status, the [Fund] remains secondarily liable to [Zwick] for payment of Claimant's benefits.

(WCAB's Op. at 8–9.) Zwick now petitions for review of that decision.[3]

On appeal, Zwick argues that the WCAB erred in concluding that he was a statutory employer under section 302(a) of the Act. Specifically, Zwick claims that the WCAB should have applied section 302(b) of the Act rather than section 302(a) and that, under section 302(b), Zwick was not a statutory employer.[4] We disagree.

A workers' compensation "[c]laimant must satisfy the criteria set forth in either [s]ection 302(a) or [s]ection 302(b) [of the Act] in order to hold [an entity] liable as a statutory employer." *Six L's Packing Company v. Workers' Compensation Appeal Board (Williamson)*, 2 A.3d 1268, 1274 (Pa.Cmwlth.2010), *aff'd*, 615 Pa. 615, 44 A.3d 1148 (2012). Under section 302(a), "a person who contracts with another (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals, or (ii) the cutting or removal of timber from lands, or (2) to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person shall be deemed a contractor." 77 P.S. § 461. Section 302(b) applies to "[a]ny employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor." 77 P.S. § 462. Thus, unlike section 302(a), section 302(b) requires a claimant to demonstrate that the alleged statutory employer occupied or exercised control over the premises where the injury occurred.

First, Zwick asserts that section 302(a) of the Act is inapplicable here because the

---

3. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Section 302(b) of the Act provides:

> Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act.

77 P.S. § 462.

work Claimant performed did not involve the cutting or removal of timber from lands. We disagree. In *Six L's Packing Company v. Workers' Compensation Appeal Board (Williamson)*, 615 Pa. 615, 44 A.3d 1148 (2012), the Pennsylvania Supreme Court rejected this same claim. The Supreme Court held that section 302(a) of the Act is not limited to scenarios involving the movement of soil, rocks, minerals, or timber. *Id.* at 1158. Applying the statute's plain language, the Supreme Court stated that "[s]ection 302(a), on its terms, also pertains to contractual delegations of aspects of an employer's regular or recurrent business activities." *Id.* (citing 77 P.S. § 461).

Next, Zwick asserts that section 302(a) is inapplicable because he is a licensed realtor, so the work Claimant performed at the time of his injury was not a regular part of Zwick's business. The record belies this claim. Zwick testified that construction rehabilitation work was a part of his business. (N.T., 8/31/11, at 5.) Zwick further testified that he hired Rodrigues to do construction work at the Property to prepare it for resale and that Zwick was "essentially" the general contractor on the job. (*Id.* at 11–12, 15.) Zwick also testified that Rodrigues had previously done construction work for him at another property. (*Id.* at 9–11.) The WCJ credited Zwick's testimony. (WCJ's Findings of Fact, No. 12.) The credited evidence supports the WCAB's conclusion that Zwick was in the business of rehabilitating properties for resale and that he hired Rodrigues to perform work that was a regular part of his business. Therefore, Zwick met the definition of a "contractor" under section 302(a) of the Act.

Finally, Zwick argues that the WCAB should have applied section 302(b) of the Act rather than section 302(a), citing *Leibensperger v. Workers' Compensation Appeal Board (Thomas H. Lewis Builders, Inc.)*, 813 A.2d 28 (Pa.Cmwlth.2002). In *Leibensperger*, our court held that a siding mechanic employed by a subcontractor was required to show that the owner of the contracting firm occupied and exercised actual control over the construction site where the mechanic was injured in order for the contractor to be a statutory employer under section 302(b) of the Act. *Id.* at 30–32. This court concluded that because the owner of the contracting firm did not exercise actual control over the construction site where the injury occurred, he was not a statutory employer under section 302(b). *Id.* at 32. Likewise, Zwick claims that because he neither occupied nor controlled the Property at the time of Claimant's injury, he was not a statutory employer under section 302(b) of the Act.

 As stated above, however, Zwick must meet the criteria in *either* section 302(a) *or* section 302(b) of the Act to be held liable as a statutory employer. Significantly, the *Leibensperger* court declined to apply section 302(a) because the case did "not involve the cutting or removal of timber from lands." *Id.* at 31. However, the Pennsylvania Supreme Court has since held that section 302(a) is not limited to cases involving the cutting or removal of timber from lands. *Six L's*, 44 A.3d at 1158. Rather, section 302(a) applies to "*any scenario* in which a 'contractor ... subcontracts all or any part of a contract,' within the scope of the work delineated in [s]ection 302(a)'s specialized definition of 'contractor' (including work of a kind which is a 'regular or recurrent part of the business' of the putative statutory employer)." *Id.* at 1157 (citing 77 P.S. § 461) (emphasis added).[5]

---

**5.** The Supreme Court further explained:
 Viewing the statutory scheme [of the Act] as a whole, ... and employing the principle of

liberal construction in furtherance of the Act's remedial purposes, ... we find it to be plain enough that the Legislature meant to

Here, the evidence established that Zwick was in the business of rehabilitating properties for resale and that the construction work Claimant performed was a regular part of Zwick's business. Accordingly, because the WCAB correctly determined that Zwick was a statutory employer under section 302(a) of the Act, we affirm.

### ORDER

AND NOW, this 11th day of December, 2014, we hereby affirm the February 27, 2014, order of the Workers' Compensation Appeal Board.

require persons (including entities) contracting with others to perform work which is a regular or recurrent part of their businesses to assure that the employees of those others are covered by workers' compensation insurance, on pain of assuming secondary liability for benefits payment upon a default.

*Six L's,* 44 A.3d at 1158–59.