# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rebuildables Construction, LLC, :
Donegal Mutual Insurance Group :
and Atlantic States Insurance Co., :
   Petitioners :
     :
  v.  : No. 335 C.D. 2015
   : Submitted: September 18, 2015
Workers' Compensation Appeal :
Board (Clouthier, Uninsured :
Employers Guaranty Fund, :
ACS Claims Service, :
7400 Roosevelt Apartments, :
US Adjustment Corporation :
and Joel Bliss t/a Bliss Contracting), :
   Respondents :


BEFORE: HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
   HONORABLE ROBERT SIMPSON, Judge
   HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**    **FILED: December 30, 2015**


   Rebuildables Construction, LLC, and its workers' compensation insurers, Donegal Mutual Insurance Company and Atlantic States Insurance Company (Rebuildables), petition for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of a Workers' Compensation Judge (WCJ), which granted a claim petition filed by William E. Clouthier (Claimant) against Rebuildables as Claimant's statutory

employer under the Workers' Compensation Act (Act).[1] Rebuildables argues (i) that it was not Claimant's statutory employer because it did not act as a general contractor that hired Claimant's direct employer, Joel Bliss t/a Bliss Contract Flooring, for work performed at 7400 Roosevelt Apartments (7400 Roosevelt),[2] the apartment complex where Claimant suffered his injury, and (ii) that the WCJ's denial of the claim petition against the Uninsured Employers Guaranty Fund (Fund) was contrary to the requirement of the Act that the Fund would guarantee the workers' compensation liability of Bliss as an uninsured employer. For the reasons that follow, we affirm the order of the Board.

The facts relating to Claimant's work injury are not in dispute. On June 28, 2012, Claimant and Bliss were working at 7400 Roosevelt removing and installing carpet in a third-floor apartment. (WCJ Decision, Finding of Fact (F.F.) ¶¶4b, 6a.) Bliss instructed Claimant to dispose of the old carpet by throwing it over a railing on a balcony adjacent to the apartment while Bliss secured the area below. (*Id.*) While in the act of disposing of the carpet, the railing gave way and Claimant fell approximately 40 to 45 feet, landing on his feet. (*Id.*, F.F. ¶4b.) Claimant was taken to the hospital and examined by Dr. Justin J. Fleming, who is board-certified in foot and ankle reconstruction and was on-call in the emergency room where Claimant was admitted. (*Id.*, F.F. ¶¶4c, 7a.) After an examination, Dr. Fleming diagnosed Claimant with bilateral ankle fractures and performed surgery on the day of the injury consisting of a closed reduction and placement of

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1, 2501–2708.

[2] "7400 Roosevelt" is used in this opinion to refer to the apartment complex where Claimant was injured and the entity that was named as a defendant to Claimant's workers' compensation claim. 7400 Roosevelt has at times in this proceeding been referred to by the name of its parent company, Signature Investment Realty, Inc., which owns other apartment buildings in addition to 7400 Roosevelt.

external fixators on both of Claimant's lower legs. (*Id.*, F.F. ¶¶4c, 7b, 7c.) Claimant remained in the hospital, and Dr. Fleming performed two more surgeries in which he removed the fixators and used plates and screws to stabilize the fractures in both legs. (*Id.*, F.F. ¶¶4c, 7c.) Following Claimant's release from the hospital, he has continued to see Dr. Fleming and his injuries have prevented him from returning to his pre-injury job. (*Id.*, F.F. ¶¶4c, 4e, 7d, 7f.)

On July 26, 2012, Claimant filed a claim petition against Bliss seeking total disability benefits for his June 28, 2012 work injury. Claimant thereafter filed an uninsured employer claim petition naming Bliss and the Fund. The Fund then joined Rebuildables and 7400 Roosevelt as defendants and potential employers or statutory employers of Claimant. Rebuildables subsequently filed a joinder petition against 7400 Roosevelt. While the claim petitions were pending, the WCJ issued an order pursuant to Section 410 of the Act, 77 P.S. § 751,[3] awarding Claimant medical benefits and ongoing temporary total disability benefits in the amount of $360 per week and requiring Bliss, Rebuildables and 7400 Roosevelt to each pay one-third of the benefits pending the final decision in the matter. Bliss, Rebuildables and 7400 Roosevelt appealed the Section 410 order, but the Board dismissed the appeals as interlocutory.

---

[3] Section 410 provides:

> Whenever any claim for compensation is presented and the only issue involved is the liability as between the defendant or the carrier or two or more defendants or carriers, the referee of the department to whom the claim in such case is presented shall forthwith order payments to be immediately made by the defendants or the carriers in said case. After the department's referee or the board on appeal, render a final decision, the payments made by the defendant or carrier not liable in the case shall be awarded or assessed against the defendant or carrier liable in the case, as costs in the proceedings, in favor of the defendant or carrier not liable in the case.

77 P.S. § 751.

On the issue of which defendant was Claimant's employer, Claimant testified that he had worked for Bliss for two to three years prior to his injury as an unskilled laborer and Bliss paid him $100 per day of work by check or cash. (Jan. 30, 2013 Hearing Transcript (H.T.) at 7-8, 13-14.) Claimant did not have a contract with Bliss, did not have his own business and did not carry liability insurance. (*Id.* at 14.) Claimant testified that he had worked between three to five days per week for Bliss in 2011, but there had been a several month gap in his employment with Bliss in 2012 until the Sunday before the accident when Bliss called Claimant to assist on a job at an apartment building in another part of Philadelphia. (*Id.* at 6-7.) On the date of his work injury, Bliss asked Claimant and another worker to perform carpet removal and installation at an apartment at 7400 Roosevelt. (*Id.* at 8-9.) Claimant testified that when he was working with Bliss he used Bliss's tools and took direction from Bliss; Claimant knew that Bliss was in a business relationship with Rebuildables and that he and Bliss had worked at jobs with Rebuildables, including one at another building in the 7400 Roosevelt complex, but Claimant did not work directly for Rebuildables and the owner of Rebuildables was not present on the day of the accident. (*Id.* at 12-14, 22-29.) Claimant testified that he had never worked for or taken instruction from anyone at 7400 Roosevelt. (*Id.* at 12-13, 26-28.)

Joel Bliss testified that he is the owner of Bliss Contract Flooring, LLC and that he hired Claimant as needed to assist him on jobs with carrying tools and materials, ripping up and removal of flooring and clean-up. (*Id.* at 34-35.) Bliss testified that he directed Claimant, Claimant used Bliss's tools and that Claimant did not do installation work because he did not have sufficient experience. (*Id.* at 36, 51.) Bliss testified that the job at 7400 Roosevelt was

4

through Rebuildables which had a relationship with Signature Properties, the parent company of 7400 Roosevelt; however, Bliss stated that the maintenance supervisor at 7400 Roosevelt contacted him directly for the job on which Claimant was hurt and that no one from Rebuildables was present on the date of the injury. (*Id.* at 38, 57-60.) Bliss testified that he had worked on jobs at other locations for Signature Properties, including the job on which he had asked Claimant to accompany him to earlier in the week. (*Id.* at 52-53.) Bliss sent invoices for his work at Signature Properties to Aaron Martinez, the owner of Rebuildables, based on a per-job rate, Martinez then invoiced Signature Properties and he received payment from Martinez and an IRS Form 1099 at the end of the year. (*Id.* at 38-39, 60, 63, 65-67.) Bliss testified that almost all of his work for Rebuildables was for Signature Properties, although he did other minor work for Rebuildables including installation of carpet at Martinez's home. (*Id.* at 57, 63-64.) Bliss testified that he did not have a contract with Rebuildables or for any of his work with 7400 Roosevelt or Signature Properties. (*Id.* at 51-52, 57.)

Aaron Martinez testified that he is the owner of Rebuildables, which is a "light commercial and residential interior fit out construction company." (May 15, 2013 H.T. at 5.) Martinez testified that Rebuildables entered into a contract with 7400 Roosevelt on September 12, 2011 for the repair of eight water-damaged apartments in the C building of 7400 Roosevelt and the work under this contract terminated in November 2011. (*Id.* at 6-7, 16.) Rebuildables hired Bliss under this contract as a subcontractor to do vinyl floor and carpet installation, and Martinez ensured the quality and timeliness of Bliss's work, but Rebuildables did not hire, supervise or employ any of Bliss's employees. (*Id.* at 8, 11, 17.) Martinez testified that 7400 Roosevelt contacted him after the conclusion of this work and

asked for Bliss to do further carpet installation work there, but Rebuildables did not supervise or check the quality of any of Bliss's continuing work for Signature Properties after the expiration of the initial project. (*Id.* at 8-9, 12-14.) Instead, Martinez acted as a billing agent for Bliss; Bliss would send Martinez a note stating the amount of work he had done for each project with his rate based on the yardage of flooring installed and Martinez would then bill Signature Properties adding an additional $1 per yard to the amount invoiced by Bliss. (*Id.* at 8-9, 12-16, 18, 20, 28.) Martinez testified that by April 2012, 7400 Roosevelt had stopped calling him for carpeting installation and instead began to call Bliss directly. (*Id.* at 20, 26.) Martinez testified that Rebuildables continued to work for Signature Properties after the initial contract had expired, including doing sidewalk repair and other concrete work. (*Id.* at 22-23.) Martinez testified that Rebuildables also continued to work with Bliss and would subcontract out carpeting work, which his company does not do itself. (*Id.* at 17-18, 27-28.)

7400 Roosevelt presented the testimony of its maintenance supervisor, Joseph Doran, and its property manager, Denise Fuoco. Doran testified that whenever he noticed that there was carpeting that needed to be replaced, he would call Fuoco and she would call for a contractor. (*Id.* at 33, 36, 39.) Doran stated that he never called Bliss directly to request him to work at 7400 Roosevelt and had no supervisory role over Bliss's or Claimant's work; Doran's only contact with Bliss was to show him into the apartment when he arrived on site. (*Id.* at 33-38.) Fuoco testified that when Doran informed her that a contractor was needed to perform work at one of their buildings, she would direct her assistant to call the contractor. (*Id.* at 44.) In the case of the carpeting work that Bliss performed, Fuoco testified that her office would call Rebuildables to advise that the work was

6

needed, Rebuildables would determine which subcontractor to hire, Rebuildables would bill the work, payment would be made to Rebuildables and Rebuildables was responsible to ensure that the work was done properly. (*Id.* at 45-50.)

By a decision and order circulated on May 22, 2014, the WCJ concluded that Claimant was entitled to ongoing total disability benefits as of June 28, 2012 and that he was not able to return to his job at the time of his injury. (WCJ Decision, F.F. ¶18, Conclusion of Law (C.L.) ¶3.) The WCJ further concluded that the claim petition should be granted against Rebuildables as Claimant's statutory employer because 7400 Roosevelt had hired Rebuildables to perform work at its apartment building and Rebuildables had then subcontracted the work to Claimant's direct employer, Bliss, who was uninsured at the time of the work injury. (*Id.*, F.F. ¶¶14, 16, 17, C.L. ¶2.) The WCJ dismissed the claim petition against 7400 Roosevelt and the Fund and ordered Rebuildables to pay the full compensation as required under the Section 410 order with a credit for amounts already paid and to reimburse other parties found not liable. (*Id.*, F.F. ¶¶21, 22, C.L. ¶¶6-8.)

Rebuildables appealed the WCJ's decision and order and the Board affirmed. The Board concluded that, though the WCJ did not make express credibility findings, a fair reading of the decision showed that the WCJ credited the evidence which established that 7400 Roosevelt was in the position of an owner with an ongoing business relationship with Rebuildables, that Rebuildables subcontracted part of its business to Bliss and that Claimant was an employee of Bliss. (Board Opinion at 6.) The Board rejected Rebuildables contention that there was evidence to support a contrary finding that 7400 Roosevelt was Claimant's statutory employer and held that there was no evidence to show that the

7

Board had dismissed 7400 Roosevelt from the workers' compensation case in order to preserve a third-party recovery against 7400 Roosevelt in a negligence suit. (*Id.* at 6-7.) Finally, the Board rejected the argument that the WCJ erred in dismissing the Fund, holding that the establishment of the Fund did not abolish the statutory employer doctrine and that the Fund's liability is secondary to a statutory employer's liability. (*Id.* at 7.) Rebuildables thereafter appealed the Board's order to this Court.[4]

Under the Act, a person or entity may be deemed a "statutory employer" with secondary liability to pay workers' compensation benefits for an injured worker that it does not directly employ when it contracts part of its business to an uninsured subcontractor and an employee of the subcontractor sustains a work injury. There are two statutory provisions, Section 302(a) and Section 302(b) of the Act, 77 P.S. §§ 461, 462, under which an employer can be shown to be a statutory employer liable to assume the workers' compensation obligations of its subcontractor.[5] The claimant has the burden of satisfying the criteria set forth in either Section 302(a) or Section 302(b) in order to hold a party liable as a statutory employer. *Zwick v. Workers' Compensation Appeal Board (Popchocoj)*, 106 A.3d 251, 254 (Pa. Cmwlth. 2014).

The more cited of the two statutory employer provisions is Section 302(b),[6] which, as our Supreme Court has explained, relates to the "conventional"

---

[4] Following the filing of its petition for review, Rebuildables filed an application for supersedeas, which this Court denied by a memorandum and order filed on May 12, 2015.

[5] Additionally, Section 203 of the Act provides that a statutory employer has the same immunity from common-law tort actions as the direct employer. 77 P.S. § 52.

[6] Section 302(b) provides that:

> Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the

8

or "classic" relationship common in the construction trades wherein a property owner hires a general contractor to perform work on a fixed work site and the general contractor then delegates some of that work to a subcontractor. *Patton v. Worthington Associates, Inc.*, 89 A.3d 643, 648 (Pa. 2014); *Six L's Packing Co. v. Workers' Compensation Appeal Board (Williamson)*, 44 A.3d 1148, 1157-58 (Pa. 2012); *see also Six L's Packing Co. v. Workers' Compensation Appeal Board (Williamson)*, 2 A.3d 1268, 1277 (Pa. Cmwlth. 2010) *aff'd,* 44 A.3d 1148 (Pa. 2012) ("Typically, in statutory employer cases, a traditional contractor-subcontractor relationship is at issue with construction work being done at a fixed site. These cases give rise to the application of Section 302(b) of the Act..."). As set forth in *McDonald v. Levinson Steel Co.*, 153 A. 424 (Pa. 1930), a claimant must satisfy the following elements to establish a statutory employer relationship under Section 302(b): (i) the employer is under contract with an owner or one in position of an owner; (ii) the employer occupies or is in control of the premises where the injury occurred; (iii) the employer entered into a subcontract; (iv) the employer entrusted a part of its regular business to the subcontractor; and (v) the injured party is an employee of such subcontractor. *Id.* at 426; *see also Six L's Packing*, 44 A.3d at 1151. The Court in *McDonald* also recognized that the owner of the property on which the injury took place may not be deemed a statutory

---

performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor.

77 P.S. § 462.

employer under the Act unless the owner reserved its right by contract to direct how the general contractor would perform its work under the contract. 153 A. at 427; *see also Six L's Packing*, 44 A.3d at 1153-54; *Smith v. Workmen's Compensation Appeal Board (Miller)*, 618 A.2d 1101, 1104 (Pa. Cmwlth. 1992).

The other statutory employer provision, Section 302(a), provides that a "contractor who subcontracts all or any part of a contract and his insurer" is liable to pay workers' compensation benefits for any injured employee of its subcontractor if the subcontractor has failed to secure coverage. 77 P.S § 461. Section 302(a) defines the contractor-subcontractor relationship as consisting of a party that contracts with another party for (i) "the removal, excavation or drilling of soil, rock or minerals"; (ii) "the cutting or removal of timber from lands"; or (iii) "to have work performed of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person." *Id*. Though this definition had traditionally been read as limiting the application of Section 302(a) only to the provision of services related to the removal of soil, rock, mineral or timber, in *Six L's Packing*, our Supreme Court explained that such a limitation is inappropriate and that Section 302(a) pertains to any contractual delegation of a party's regular or recurrent business activities to another. 44 A.3d at 1158; *see also Zwick*, 106 A.3d at 254-55.

In *Six L's Packing*, our Supreme Court recognized that while there is "substantial overlap" between Section 302(a) and Section 302(b) there are also important differences between the two provisions. 44 A.3d at 1158. Among these differences is the fact that by its text Section 302(b) requires that the general contractor occupy or exercise control over the site where the injury occurred while Section 302(a) does not contain this requirement and instead "extends to any

10

scenario in which a 'contractor...subcontracts all or any part of a contract.'" *Id*. at 1157 (quoting 77 P.S. § 461); *see also Zwick*, 106 A.3d at 255. Thus, though recognizing that the analysis under the two provisions contain overlapping factors, the Court rejected the application of the *McDonald* test to Section 302(a) and held that this provision must be analyzed according to its own terms. *Six L's Packing*, 44 A.3d at 1159 & n.12. Further, the Court held that the broad exclusion of owners from statutory employer liability of Section 302(b) under *McDonald* was inapplicable to Section 302(a). *Six L's Packing*, 44 A.3d at 1159. The Court in *Six L's Packing* concluded:

> Viewing the statutory scheme as a whole...and employing the principle of liberal construction in furtherance of the Act's remedial purposes,...we find it plain enough that the Legislature meant to require persons (including entities) contracting with others to perform work which is a regular or recurrent part of their businesses to assure that the employees of those others are covered by workers' compensation insurance, on pain of assuming secondary liability for benefits payments upon a default.

*Id*. at 1158-59 (citation omitted).

On appeal, Rebuildables argues that the WCJ erred by finding that it was Claimant's statutory employer. Rebuildables contends it did not meet the elements required to show statutory employer status under *McDonald* because Rebuildables did not have a contract with 7400 Roosevelt or Bliss and was not present at the work site where Claimant was injured. Instead of having a contractor-subcontractor relationship with Bliss, Rebuildables asserts that it was only acting as a billing agent for Bliss to facilitate Bliss's independent business relationship with 7400 Roosevelt. Rebuildables further argues that 7400 Roosevelt

11

was in fact Claimant's statutory employer because 7400 Roosevelt, and not Rebuildables, hired Bliss and directed his carpet installation work at its properties.

Our review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. 2 Pa. C.S. § 704; *Zwick*, 106 A.3d at 254 n.3. It is irrelevant whether the record contains evidence to support alternate findings and instead we must determine whether there is substantial evidence to support the findings of fact actually made by the WCJ. *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734, 743 n.16 (Pa. Cmwlth. 2010); *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sell v. Workers' Compensation Appeal Board (LNP Engineering),* 771 A.2d 1246, 1250 (Pa. 2001) (quoting *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Shinsky)*, 421 A.2d 1060, 1062 (Pa. 1980)).

After careful review, we conclude that there was substantial evidence to show that Rebuildables was Claimant's statutory employer. Initially, we observe that, although both the WCJ and the Board cited the *McDonald* test for statutory employment applicable to Section 302(b), neither the WCJ nor the Board indicated whether Rebuildables was found to be a statutory employer under Section 302(a) or Section 302(b). We agree with Rebuildables' argument that the record does not support a finding that Rebuildables occupied or was in control of the premises where Claimant's injury occurred, an essential element under the

12

*McDonald* test. In order to satisfy this element, a claimant must demonstrate that the alleged statutory employer actually occupied or controlled the work site; it is not sufficient to show that the employer merely had the right or authority to control the site. *Leibensperger v. Workers' Compensation Appeal Board (Thomas H. Lewis Builders, Inc.)*, 813 A.2d 28, 30-31 (Pa. Cmwlth. 2002); *Wright Demolition & Excavating Co. v. Workmen's Compensation Appeal Board (Manuel)*, 434 A.2d 232, 234 (Pa. Cmwlth. 1981). Here, the testimony of Claimant, Bliss and Martinez demonstrates that no one from Rebuildables was present at the apartment in the 7400 Roosevelt complex where Bliss and Claimant were working on the date of the work incident and that Rebuildables did not provide any direction regarding the carpet removal and installation work that was being performed that day. (Jan. 30 2013 H.T. at 12, 24, 29, 58; May 15, 2013 H.T. at 9, 12-14.) The record is thus insufficient to show that Rebuildables actually occupied or controlled the work site under *McDonald*, and there is not substantial evidence to support a finding that Rebuildables was Claimant's statutory employer under Section 302(b).

Nevertheless, there was substantial evidence to support the WCJ's determination that Rebuildables was Claimant's statutory employer under Section 302(a) because Rebuildables contracted with Bliss "to have work performed of a kind which is a regular or recurrent part of [its] business, occupation, profession or trade." 77 P.S. § 461. Specifically, the WCJ found, and the evidence of record reflects, that Rebuildables is a "light commercial and residential interior fit out construction company," (May 15, 2013 H.T. at 5), that contracted with 7400 Roosevelt and its parent, Signature Properties, for apartment carpet removal and installation jobs, which Rebuildables would then subcontract to Bliss. That Rebuildables was more than merely a billing agent and engaged in the type of

13

construction that it subcontracted to Bliss is evidenced by the fact that Rebuildables had previously entered into a contract with 7400 Roosevelt in September 2011 for the remediation and reconstruction of eight water damaged apartments in which Rebuildables agreed to perform the identical services that led to the type of injury at issue here. Contrary to Rebuildables' argument, it is also irrelevant that the original September 2011 contract between Rebuildables and 7400 Roosevelt had expired before the date of Claimant's accident; Rebuildables and 7400 Roosevelt had an ongoing business relationship and there is no requirement in the Act that a statutory employment relationship must be memorialized in a written contract. Furthermore, the record reflects that the contractor-subcontractor relationship between Rebuildables and Bliss was not the type of fixed-site, construction relationship that has traditionally been analyzed under Section 302(b). Rather than working on one site over a course of time, Rebuildables contracted with Bliss to perform numerous carpet removal and installation jobs at various apartments at 7400 Roosevelt and at other apartments owned by Signature Properties.

Rebuildables further contends that the WCJ erred by dismissing the claim petition against 7400 Roosevelt because 7400 Roosevelt, rather than Rebuildables, was Claimant's statutory employer for the June 28, 2012 job on which Claimant was injured. As discussed above, the property owner exclusion under *McDonald* and Section 302(b) is not applicable to Section 302(a), *Six L's Packing*, 44 A.3d at 1159, and thus 7400 Roosevelt is not excluded from being a statutory employer on that ground. However, carpet installation or construction was not a "regular or recurrent part" of 7400 Roosevelt's business. 77 P.S. § 461. Rather, 7400 Roosevelt and its parent company Signature Properties were property

14

owners and property management companies, and to the extent it needed construction and repair work it enlisted companies like Rebuildables, which in this case subcontracted its work to Bliss. The fact that 7400 Roosevelt looked to Rebuildables to perform the carpet installation work and expected Rebuildables to ensure the quality of the work is evidenced by the testimony of Denise Fuoco, the property manager of 7400 Roosevelt, that all contact for these jobs, including notification that work was necessary, billing and payment, went through Aaron Martinez of Rebuildables and if anything went wrong with a project Fuoco would call Martinez. (May 15, 2013 H.T. at 45-50.) Accordingly, we agree with the WCJ that 7400 Roosevelt was not Claimant's statutory employer under the Act.

Finally, Rebuildables argues that the WCJ improperly dismissed the Fund from this matter because the WCJ's decision is contrary to the Fund's obligation pursuant to Act 147 of 2006[7] to assume the workers' compensation liabilities of uninsured employers. This argument is without merit. Rebuildables' argument would essentially abrogate Section 302(a) and Section 302(b) and insulate general contractors from workers' compensation liability if their subcontractors fail to procure insurance. The only authority cited by Rebuildables is Section 1602(c) of the Act, which provides that the Fund was created for the "exclusive purpose" of "paying to any claimant or his dependents workers' compensation benefits due and payable under this [A]ct...where the employer liable for the payments failed to insure or self-insure its workers' compensation liability...at the time the injuries took place." 77 P.S. § 2702(c). However, Section 1602(c) does not mandate that the Fund pay benefits even where a statutory employment relationship could be found nor does it define "employer" to exclude

---

[7] Sections 1601 to 1608 of the Act, added by the Act of November 9, 2006, P.L. 1362, *as amended*, 77 P.S. §§ 2701-2708.

15

statutory employers, as to which the Fund's liability is secondary.[8]  In the absence of clear statutory language, we decline to rule that by creating the Fund the General Assembly intended to abolish the statutory employer doctrine and insulate all general contractors from workers' compensation liability if their subcontractors fail to procure insurance.

The order of the Board is affirmed.


_____

JAMES GARDNER COLINS, Senior Judge

---

[8] The term "employer" in the Act is defined "to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." Section 103 of the Act, 77 P.S. § 21; Section 1601 of the Act, 77 P.S. § 2701.  This definition of an employer as being synonymous with a master is consistent with the general definition of a statutory employer in *McDonald* as "a master who is not a contractual or common-law one, but is made one by the Act."  153 A. at 425; *see also* 77 P.S. § 462 (describing a statutory employer as an "employer" in Section 302(b)).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Rebuildables Construction, LLC, | : |
| Donegal Mutual Insurance Group | : |
| and Atlantic States Insurance Co., | : |
| Petitioners | : |
| | : |
| v. | : No. 335 C.D. 2015 |
| | : |
| Workers' Compensation Appeal | : |
| Board (Clouthier, Uninsured | : |
| Employers Guaranty Fund, | : |
| ACS Claims Service, | : |
| 7400 Roosevelt Apartments, | : |
| US Adjustment Corporation | : |
| and Joel Bliss t/a Bliss Contracting), | : |
| Respondents | : |

# **O R D E R**


AND NOW, this 30th day of December, 2015, the order of the Workers' Compensation Appeal Board in the above matter is affirmed.


_____
JAMES GARDNER COLINS, Senior Judge